UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>   v.<br><br>JAMES HOUSE,<br><br>  Defendant. | Case No. 14-cr-00329-SI-1<br><br>**ORDER GRANTING MOTION TO STAY AND DENYING GOVERNMENT'S MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>Re: Dkt. Nos. 23, 27, 32 |

On August 5, 2016, the Court held a hearing on petitioners' motion to stay. For the reasons set forth below, the Court GRANTS petitioners' motion for a stay and DENIES the government's motion to dismiss without prejudice to renewal once the stay is lifted.

**BACKGROUND**

On March 18, 2014, the government filed a twenty-nine count indictment against David Lonich, Brian Melland, and Sean Cutting.[1] *United States v. Lonich et al.*, Case No. CR-14-139 SI. Melland, Cutting and Lonich are charged with, *inter alia*, conspiracy to commit wire and bank fraud in violation of 18 U.S.C § 1349 (Count One), bank fraud in violation of 18 U.S.C. § 1344 (Count Two), wire fraud in violation of 18 U.S.C. § 1343 (Counts Three through Eight), conspiracy to make false statements to a bank in violation of 18 U.S.C. § 371 (Count Nine), conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) (Count Ten), and money laundering in violation of 18 U.S.C. § 1957 (Counts Eleven through Twenty-Two).

---

[1] Bijan Madjilessi was originally charged in the indictment with the other defendants. Madjilessi died after the indictment and by operation of law all charges against him were dismissed.

Madjlessi was a real estate developer, Lonich was Madjlessi's attorney, Cutting was President and CEO of Sonoma Valley Bank until it failed in August 2010, and Melland was the Senior Vice President and Chief Loan Officer of Sonoma Valley Bank until March 2010. The indictment also sought forfeiture pursuant to 18 U.S.C. §§ 982(a)(1), 982(a)(2)(A), and 982(b).

On June 20, 2014, defendant James House was charged by information with five counts of violations of 18 U.S.C. § 1349 (Conspiracy to Commit Bank/Wire Fraud); 18 U.S.C § 1343 (Wire Fraud); 18 U.S.C. § 1344 (Bank Fraud); 18 U.S.C. § 371 (Conspiracy to Make False Statement to Bank); and 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering). The information also sought criminal forfeiture pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2)(A), 18 U.S.C. § 982(b), and 28 U.S.C. § 2461(c). In an order filed July 9, 2014, the Court found the *Lonich* and *House* cases related.

The following facts are alleged in the *Lonich* indictment.[2] From approximately March 2009 until approximately September 2012, Madjlessi, Melland, Cutting, Lonich and House[3] defrauded Sonoma Valley Bank and others by means of materially false and fraudulent pretenses, representations, and promises and by omission and concealment of material facts. Specifically, the government alleges that on or around April 2008, Madjlessi defaulted on an IndyMac Bank loan of more than $30,000,000 that he had personally guaranteed and that had been used to fund construction of a condominium project called the Park Lane Villas ("PLV") East. According to the government, Madjlessi, Melland, Cutting, Lonich and House conspired to have Madjlessi bid on and obtain this defaulted loan contrary to FDIC regulations and through House as a straw borrower. The government alleges that in March 2009, Lonich created an entity called 101 Houseco, and installed House as its nominal owner. The government charges that House was a straw buyer who exercised no meaningful control of 101 Houseco and that instead, Madjlessi and Lonich exerted control over the company.

To fund the bid for the defaulted IndyMac loan, Madjlessi approached Sonoma Valley

---

[2] The *House* information contains similar but less detailed allegations.

[3] The *Lonich* indictment refers to House as "J.H."

Bank executives Melland and Cutting seeking a loan for 101 Houseco. Melland and Cutting knew that 101 Houseco was a straw purchaser, and they took steps to authorize that loan, which was initially disbursed to 101 Houseco in March 2009. Sonoma Valley Bank loaned a total of almost $9,500,000 to 101 Houseco. Of the final balance, more than $4,000,000 was used to purchase Madjlessi's defaulted IndyMac loan and more than $4,500,000 went to Masma Construction, a company controlled by Madjlessi. In or about January 2010, Madjlessi and Lonich, utilizing House, caused 101 Houseco to settle a pending civil suit relating to Madjlessi's defaulted loan, foreclose on PLV East, and obtain title to the project.

On June 19, 2014, the government recorded in the *Lonich* case a notice of lis pendens as to the real property and improvements located at 3751 Sebastopol Road, Santa Rosa, California. Dkt. No. 40 in CR 14-139 SI. This is the PLV property.

On July 18, 2014, House pled guilty to counts one through five of the information. Dkt. No. 7. In his plea agreement, House admitted that he conspired with Madjlessi and Lonich in a scheme to defraud Sonoma Valley Bank with the ultimate goal of allowing Madjlessi and Lonich to gain control of PLV East. House admitted that in furtherance of the scheme he acted as the owner of 101 Houseco in order to obtain the loan for Madjlessi from Sonoma Valley Bank. House also admitted that he knew that 101 Houseco was actually controlled by Madjlessi and Lonich but falsely represented to Sonoma Valley Bank that he was the owner of 101 Houseco. House also agreed to forfeit, to the United States "any property constituting, or derived from, proceeds obtained directly or indirectly, resulting from the violations alleged in Counts One through Three of the Information"; and "any property, real or personal, involved in the in the violation alleged in Count Five of the Information and property traceable thereto, including but not limited to a sum of money equal to the amount of property involved in said violation." *Id*. ¶ 14.

On April 8, 2016, the United States applied in the *House* case for a preliminary order of forfeiture of 3751 Sebastopol Road, Santa Rosa, California. On April 11, 2016, Court entered the preliminary order of forfeiture.

On May 17, 2016, a petition opposing the preliminary order of forfeiture was filed by Lonich in his capacity as the attorney for 114 Park Lane Santa Rosa, LLC. Dkt. No. 18. The

petition states that House "does not now, nor did he ever, own the real property and improvements thereon described in the Preliminary Order of Forfeiture." *Id*. ¶ 1. The petition also states the property is owned by 101 Houseco, and that "despite House's contrary allegations in his guilty plea, that 101 Houseco, LLC obtained the subject property lawfully, and not through any fraud or any other criminal conduct. Accordingly, upon hearing, petitioner intends to prove that the subject property is not subject to forfeiture." *Id*. ¶ 2. The petition also states that since September 6, 2012, 114 Park Lane Santa Rosa, LLC has been the sole member of 101 Houseco LLC, and that "[t]he issue of petitioner's sole membership, however, is the subject of a lawsuit now pending in the Sonoma Superior Court and designated by Case No. SCV-255142." *Id*. ¶ 3.

On June 10, 2016, 101 Houseco, LLC filed a petition opposing the preliminary order of forfeiture. Dkt. No. 21. That petition was also filed by Lonich in his capacity as attorney for 101 Houseco, LLC. As with the petition filed by 114 Park Lane Santa Rosa, LLC, the petition claims that House never owned the subject property and that 101 Houseco, LLC is the lawful owner and that the property is not subject to forfeiture. *Id*. ¶¶ 1-2.

On June 15, 2016, the government filed a motion to dismiss the petition of 114 Park Lane Santa Rosa, LLC, for lack of standing.[4] Dkt. No. 23. On June 30, 2016, 114 Park Lane Santa Rosa, LLC and 101 Houseco, LLC moved to stay the forfeiture proceedings until the conclusion of the *Lonich* case. Dkt. No. 32. The government opposes a stay. Trial in the *Lonich* case is set for March 20, 2017. Dkt. No. 222 in CR 14-139 SI.

## DISCUSSION

Petitioners contend that a stay of the forfeiture action until the conclusion of the *Lonich* case is necessary in order to preserve justice. Petitioners assert that "[s]ince there can be no question that the Lonich Criminal Case and the House Criminal Case are related, anything Lonich may testify to in this case on behalf of Petitioners 101 Houseco and 114 Park Lane Santa Rosa

---

[4] The government contends that 114 Park Lane Santa Rosa, LLC lacks standing under 21 U.S.C. § 856(n)(6) because the petition does not "set forth the nature and extent of the petitioner's right, title, or interest in the property, [and] the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property . . . ."

1  would necessarily require that he relinquish his 5th Amendment privilege against giving
2  compelled testimony." Dkt. No. 32 at 4.  Petitioners also argue that if and when Lonich is found
3  not guilty in the related case, such a finding would necessarily also mean that 101 Houseco was
4  not a straw purchaser and therefore that the subject property could not be forfeited.  Petitioners
5  also argue that a stay will not prejudice the government because the government recorded a lis
6  pendens in June 2014, and the government waited over two years after House's guilty plea to seek
7  forfeiture.

8         The government opposes a stay on numerous grounds. The government argues that
9  petitioners are limited liability corporations that do not have a Fifth Amendment privilege against
10 self-incrimination, and the government notes that neither petitioner is a defendant in the *Lonich*
11 action. The government asserts that although petitioners claim that Lonich is a key witness in the
12 forfeiture proceeding, petitioners have not "fully describ[ed] what the actual obstacles are with
13 respect to his participation."  Dkt. No. 36 at 3.  The government also contends that petitioners
14 cannot challenge House's guilty plea in the forfeiture proceeding, as "[t]he ancillary proceeding is
15 simply a quiet title proceeding in which the court determines whether the forfeited property
16 belongs to the third party contesting the forfeiture." *Id*. at 4.  The government also argues that by
17 filing the petitions, Lonich has waived his right against self-incrimination. Finally the government
18 argues that 114 Park Lane Santa Rosa, LLC lacks standing and cannot seek a motion to stay.

19        The Court's power to stay proceedings is "incidental to the power inherent in every court
20 to control the disposition of the causes on its docket with economy of time and effort for itself, for
21 counsel, and for litigants." *Landis v. North American Co*., 299 U.S. 248, 254 (1936).  The Court
22 concludes that a stay of the forfeiture proceeding is in the interest of justice and judicial efficiency.
23 The Court recognizes that House has pled guilty in his case and that he has admitted that 101
24 Houseco was a straw purchaser.  However, Lonich denies the government's allegations and asserts
25 that 101 Houseco was a bone fide purchaser and the lawful owner of the PLV property.  In light of
26 the factual overlap between the two cases, the Court finds it prudent to stay the forfeiture
27 proceedings until the allegations against Lonich and his co-defendants have been adjudicated.
28 While the government is correct that corporations do not have a Fifth Amendment right against

self-incrimination, Lonich does have such a right, and petitioners have represented to this Court that Lonich's testimony is necessary to the forfeiture proceeding.[5]

The Court also finds that a stay will not prejudice government. As petitioners note, the government recorded a lis pendens on the property, and the government has not identified any reason why the forfeiture proceedings must take place now as opposed to after the conclusion of the *Lonich* case. Trial is set for March 2017, and thus a stay of the forfeiture proceedings will not be lengthy.

## CONCLUSION

Accordingly, the Court GRANTS petitioners' motion for a stay and DENIES the government's motion to dismiss without prejudice to renewal once the stay is lifted.

**IT IS SO ORDERED**.

Dated: August 5, 2016

_____
SUSAN ILLSTON
United States District Judge

---

[5] The Court finds it unnecessary to resolve at this time the scope of the issues that could be presented in the forfeiture proceedings.